435 A.2d 901

**COMMONWEALTH of Pennsylvania**

v.

**Michael Duane THOMAS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Filed Oct. 9, 1981.

Lester G. Nauhaus, Public Defender, Pittsburgh, for appellant.

Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

The present appeal comes to us from an order of the criminal division of the common pleas court of Allegheny County purporting to revoke appellant's parole and sentencing him to a term of incarceration of from two and a half years to five years. We now reverse the judgment of sentence entered and remand the case for proceedings not inconsistent with this opinion.

Appellant was arrested July 10, 1974 on a charge of robbery. Shortly after his arrest and before his arraignment appellant exhibited "bizarre behavior;" following testimony by the director of the County's Behavior Clinic, a board certified psychiatrist, appellant was ordered committed to Mayview State Hospital for sixty days. This commitment was made pursuant to Section 408 of the Mental

Health & Mental Retardation Act of 1966, Special Sess. No. 3, October 20, P.L. 96, art. iv, § 408; 50 P.S. § 4408. (Hereinafter, the Act of 1966 or the Mental Health & Mental Retardation Act of 1966.)[1] Upon the recommendation of the hospital's professional staff the commitment was ordered continued on November 8, 1974 for a period of ten months or appellant's attainment of competency sufficient, whichever was shorter, to allow him to stand trial on the robbery charge. In mid-January, 1975 the hospital informed the court that with the aid of medication appellant's condition had significantly improved and that he was now competent to stand trial. Appellant was ordered returned to the county jail January 27, 1975. Apparently a board certified psychiatrist employed by the Behavior Clinic advised the court on January 31, 1975 that appellant was not criminally responsible for the robbery he committed July 10, 1974 and recommended acquittal by reason of insanity.[2] The same psychiatrist recommended appellant's parole under the Act of 1911, May 11, P.L. 273, § 1; 1913, May 23, P.L. 335, § 1. 19 P.S. 1381 (Hereinafter, the Act of 1911). A bench trial was held February 13, 1975. Following the close of testimony, which included medical evidence, the court found appellant not guilty by reason of insanity.[3] Pursuant to the Act of 1911 the court ordered appellant placed on parole in the custody of the Allegheny County Parole and Probation Office for a period of five years.[4] As conditions for appellant's

1. Section 502 of the Mental Health Procedures Act, 1976, July 9, P.L. 817, No. 143 (50 P.S. § 7502) repealed this section except insofar as it related to mental retardation or to persons who are mentally retarded.

2. The record transmitted to this Court contains neither transcript of testimony nor copy of any written communication in this regard. However, because it is reported in the lower court's opinion we will take it to be an accurate statement of the facts.

3. The instant record does not contain the notes of testimony of this trial either.

4. The Act of 1911 reads:
 Release on parole after acquittal because of insanity.
 When any person charged with any crime or misdemeanor has heretofore been, or shall hereafter be, acquitted by the jury, on the

parole the court required him to reside with his father and to report to the nearest mental health clinic for continued medication and treatment as needed. No appeal was taken from this order of parole.

Appellant's behavior between February 13, 1975 and August 1, 1976 was marked by numerous psychotic episodes followed by varying periods of civil commitment. On August 1, 1976 appellant threw his two month old child down a flight of concrete city steps, which action caused the child's death. Appellant was apprehended shortly thereafter. Because he was once again determined to be unable to stand trial or assist in his defense he was committed to Fairview State Hospital, again pursuant to Section 408 of the 1966 Mental Health and Mental Retardation Act. He stood trial for the infanticide in April 1977, and was adjudged not guilty of murder by reason of insanity. The instant record does not reveal what action in the nature of commitment the court took following that acquittal. At any rate, appellant was brought before the court for a hearing on the revocation

ground of insanity, such person may be released from custody on parole, by the court wherein such person shall have been so acquitted.

Act of May 11, 1911, P.L. 273, § 1; May 23, 1913, P.L. 335, § 1. 19 P.S. 1381.

It was apparently adopted as an adjunct to the Act of March 31, 1860, P.L. 427, § 66; 1929, April 17, P.L. 532, § 2. 19 P.S. 1351. The Act of 1860 reads:

Proceedings after acquittal on the ground of insanity; costs. In every case in which it shall be given in evidence upon the trial of any person charged with any crime or misdemeanor, that such person was insane at the time of the commission of such offense, and he shall be acquitted, the jury shall be required to find specially whether such person was insane at the time of the commission of such offense, and to declare whether he was acquitted by them on the ground of such insanity; and if they shall so find and declare, the court before whom the trial is had shall order the cost of prosecution to be paid by the county, and shall have the power to order him to be kept in strict custody, in such place and in such manner as to the said court shall seem fit, at the expense of the county in which the trial is had, so long as such person shall continue to be of unsound mind.

*Id.* The Act of 1911 was specifically repealed by the Judiciary Act Repealer Act (JARA), Act of 1978, April 28, P.L. 202, No. 53, § 2(a)[377] and not reenacted elsewhere.

of the parole order issued for the earlier robbery. On September 20, 1977, the court revoked the parole earlier imposed and sentenced appellant to a term of imprisonment.[5]

The illegality of sentence is not a waivable matter and may be considered by the appellate courts of the Commonwealth *sua sponte*. See *Commonwealth v. Schilling*, 288 Pa.Super. 359, 431 A.2d 1088 (1981). And see *Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174 (1978); *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976); *Commonwealth v. Jellots*, 262 Pa.Super. 17, 396 A.2d 461 (1978); *Commonwealth v. Usher*, 246 Pa.Super. 602, 371 A.2d 995 (1977). Despite his acquittal on the robbery charge a judgment of sentence of parole was entered against the appellant, which judgment of sentence was never appealed. Although he was not originally sentenced to imprisonment appellant was released on a conditional parole and later imprisoned for violation of the parole conditions. Appellant now argues correctly that parole is the legal equivalent of imprisonment, in that both constitute judgments of sentence on a conviction. See *Commonwealth ex rel. Johnson v. Bookbinder*, 213 Pa.Super. 335, 247 A.2d 644 (1968); *Commonwealth ex rel. Alexander v. Rundle*, 206 Pa.Super. 528, 214 A.2d 304 (1965); *Commonwealth ex rel. Lerner v. Smith*, 151 Pa.Super. 265, 30 A.2d 347 (1943). And see *Anderson v. Corall*, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923); *United States ex rel. Binion v. O'Brien*, 273 F.2d 495 (3 Cir. 1959) *cert. denied*, 363 U.S. 812, 80 S.Ct. 1249, 4 L.Ed.2d 1154 (1960). Thus, it can undeniably be said that there was a judgment of sentence entered against appellant the legality of which is subject to our *sua sponte* review.

The Act of March 31, 1860 empowered the Commonwealth's criminal courts to keep a person of unsound mind in strict custody so long as that condition pertained, even following acquittal of that person for reasons of insanity. Act of March 31, 1860, P.L. 427, § 66; Act of April 17, 1929,

---

**5.** Appellant's brief reveals that following psychotic episodes in prison he was removed to Fairview State Hospital.

P.L. 532, § 2. 19 P.S. § 1351. (Hereinafter, the Act of 1860.) The Act of May 11, 1911 specifically allowed the courts to release persons acquitted by reason of insanity from strict custody and to place them on parole. In *Commonwealth v. Wilcox*, 77 Pa.Super. 136 (1921), this Court held that the Act of 1911 authorized not just unconditional parole, but conditional parole as well, and that the parolee could be returned to court custody if parole conditions were violated. It was on the basis of these two Acts that the court released appellant into the custody of the Allegheny County Parole and Probation Office, and upon which he was later imprisoned. However, in *Commonwealth ex rel. DiEmilio v. Shovlin*, 449 Pa. 177, 295 A.2d 320 (1972) the Supreme Court of Pennsylvania held that the Mental Health & Mental Retardation Act of 1966, *supra*, repealed the Act of 1860. And see *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977). Section 413 of the Act of 1966, which established procedures for civil commitment of persons acquitted for reasons of insanity, reads:

 Commitment of person acquitted of crime because of insanity.

(a) Whenever any person charged with any crime is acquitted on the ground of insanity or having been insane at the time he committed the crime, the jury or the court as the case may be, shall state such reason for acquittal in its verdict.

(b) In such event, the court may direct the Attorney for the Commonwealth to act as petitioner to initiate commitment proceedings under section 406.

50 P.S. § 4413. The Commonwealth argues that the Act of 1966, although it permits the court to direct proceedings under another section of the Act, to-wit, Section 406, 50 P.S. § 4406, does not preclude parole of the person acquitted as per the Act of 1911; 19 P.S. 1381. The Commonwealth's argument ignores the teaching of *Commonwealth ex rel. DiEmilio v. Shovlin, supra*, where the Supreme Court stated:

Thus the Mental Health and Mental Retardation Act of 1966 evidences a clear legislative intent that those defend-

ants acquitted on the ground of insanity were to be accorded the same procedural safeguards when committed for medical treatment as any other individual committed under section 406. To achieve that end the Legislature by its Mental Health and Mental Retardation Act of 1966 repealed the Act of 1860 by providing in section 4701(b) of the Mental Health and Mental Retardation Act of 1966: "All other acts and parts of acts are repealed in so far as they are inconsistent herewith."

In enacting the Mental Health and Mental Retardation Act of 1966 the Legislature . . . established a comprehensive program for the commitment and medical treatment of *all* mentally disturbed individuals. . . .

*Id.*, 449 Pa. at 181–182, 295 A.2d at 323. If the Act of 1860, which permitted the court to maintain an individual acquitted of a crime by reason of insanity in its strict custody and under its control, was repealed by the Mental Health & Mental Retardation Act of 1966, for reasons of inconsistency with the later Act's substance and procedure, then it would follow logically that the Act of 1911, which specifically empowered the court to authorize parole as a form of custody of such an one, must also have been repealed by the Act of 1966. *See* 50 P.S. § 4701(b). Therefore, we hold that the Act of 1911, which authorized the court to parole a person acquitted by reason of insanity, was repealed by the Mental Health & Mental Retardation Act of 1966 and replaced with the procedural safeguards contained elsewhere in that Act, to-wit, Section 406 of the Act of 1966. 50 P.S. §§ 4406, 4701(b). Because the Act which authorized the court to parole appellant had been repealed at the time of his acquittal by reason of insanity the sentence of parole was beyond the power of the court and illegal; it follows that the revocation of appellant's parole was also void.[6]

6. Because the court had no statutory authority to order appellant's parole or imprisonment we need not address the issue of whether it constitutes cruel and unusual punishment under the Eighth Amendment to the federal Constitution to sentence a person found not guilty by reason of insanity to parole, or subsequently to revoke parole. Nor need we consider whether the Mental Health Procedures

Ordinarily the remedy for the imposition of an illegal or erroneous sentence is not discharged but remand to the lower court for resentencing. See *Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1977). However, in this case sentencing was not only illegal but statutorily contradicted. At the time of the purported sentencing the court should have followed the procedures set out in Section 406 of the Mental Health & Mental Retardation Act of 1966. However, that section of the Act of 1966 has been repealed by Section 502 of the Mental Health Procedures Act of 1976, July 9, P.L. 817, No. 143 (50 P.S. § 7502) and replaced with a more comprehensive procedural scheme. Therefore, we vacate the judgment of sentence and remand the case to the lower court with the directive that appellant be discharged from criminal custody for the violation of his purported parole, and that the court order the appropriate proceedings under the Mental Health Procedure Act of 1976.

Parole revocation reversed, judgment of sentence vacated and case remanded for proceedings not inconsistent with this opinion.

Act of 1976 repealed the Acts of 1860 and 1911 since we have already held the latter Acts repealed by the Act of 1966.